**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| CARL SUPERINA, DONNA HELTON, RONALD McWILLIAMS, TRACEY WIGG, and DANIEL SHERBAUM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>Defendant. | Case No. _______________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Carl Superina, Donna Helton, Ronald McWilliams, Tracey Wigg, and Daniel Sherbaum ("Plaintiffs"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through their attorneys, bring this Class Action Complaint against Defendant Nissan North America, Inc. ("Defendant" or "Nissan"), and complain and allege upon personal knowledge as to themselves and information and belief as to all other matters.

## NATURE OF THE ACTION

1. Plaintiffs bring this action individually and on behalf of a class of United States residents consisting of current and former owners and lessees of model year 2017–2022 Nissan Rogue Sport vehicles (collectively, the "Vehicles" or "Class Vehicles").

2. As alleged herein, the Class Vehicles are unsafe and defective. The Vehicles have dangerous and defective radiator coolant fans (the "Radiator Fans") that cause the Vehicles' engines to overheat (the "Defect"). The Defect is due to defective materials used in the Radiator Fans. When a car engine overheats, the potential ramifications are serious. If the engine stays

overheated for too long, parts such as the cylinder head and gasket can be damaged, resulting in failure of the engine. Overheating can also lead to stalling, leaving Vehicles in dangerous locations.

3. Defendant knew or should have known about the Defect before selling the Vehicles to Plaintiffs and Class members. Defendant performs rigorous pre-sale testing and received numerous consumer complaints relating to the Defect.

4. The Class Vehicles did not perform as warranted and Defendant omitted information about the Defect.

5. Plaintiffs and Class members were injured by Defendant's omissions, as they received Vehicles that were fundamentally different from what they believed they were purchasing, and less valuable than was represented.

6. Despite Defendant's knowledge of the Defect, it has failed to issue a recall or offer another remedy. This means that Class members with out-of-warranty Vehicles must choose between paying for the expensive replacement of the Radiator Fans or driving an unsafe vehicle.

7. Plaintiffs bring this action to obtain redress for those who have purchased or leased the Vehicles. Plaintiffs seek remedies for Defendant's breach of implied warranties, fraud/fraudulent omissions, unjust enrichment, violations of New York General Business Law § 349, violations of Illinois Consumer Fraud and Deceptive Business Practices Act, violations of Illinois Uniform Deceptive Trade Practices Act, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and seek declaratory and injunctive relief to prevent Defendant's continued misconduct.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is

a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is located in this District.

## PARTIES

**Plaintiff Carl Superina**

10. Plaintiff Carl Superina resides in Smithtown, New York. Plaintiff Superina owns a 2018 Nissan Rogue Sport that he purchased certified used from a Nissan dealership in New York on July 16, 2021.

11. In or about the summer of 2025, the Defect manifested in Plaintiff Superina's car. When driving at low speeds or when stopped, Plaintiff Superina's Vehicle's engine temperature would rise and his air conditioner would blow hot air. On July 1, 2025, Plaintiff Superina took his Vehicle to a mechanic, SJK Automotive, in Smithtown, New York, to obtain an attempted repair. At the time, Plaintiff Superina's Vehicle was outside of Nissan's basic warranty of 3 years/36,000 miles or Nissan's powertrain warranty of 5 years/60,000 miles. Plaintiff Superina paid $688.87 out of pocket for the replacement of the Radiator Fan in his Vehicle.

12. Since the replacement of the Radiator Fan, Plaintiff Superina has experienced an additional occasion where the Radiator Fan on his Vehicle seemed to stop working.

13. Had Defendant disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to Plaintiff Superina purchasing his Vehicle, Plaintiff Superina would not have made the purchase, or would have paid less for the Vehicle. As a result,

Plaintiff Superina received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

**Plaintiff Donna Helton**

14. Plaintiff Donna Helton resides in Fort Worth, Texas. Plaintiff Helton formerly owned a 2020 Nissan Rogue Sport that she purchased new from Granbury Nissan, an authorized Nissan dealership, in Texas in or about October of 2020.

15. In or about late-June of 2024, the Defect manifested in Plaintiff Helton's Vehicle. Plaintiff Helton's Vehicle began to lose power prior to her taking it to be serviced. On July 1, 2024, Plaintiff Helton took her Vehicle to a private mechanic in Kennedale, Texas, to obtain an attempted repair. Plaintiff Helton paid $850.68 out of pocket for the replacement of the Radiator Fan in her Vehicle.

16. Had Defendant disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to Plaintiff Helton purchasing her Vehicle, Plaintiff Helton would not have made the purchase, or would have paid less for the Vehicle. As a result, Plaintiff Helton received less than what she paid for her Vehicle and did not receive the benefit of her bargain.

**Plaintiff Ronald McWilliams**

17. Plaintiff Ronald McWilliams resides in Loves Park, Illinois. Plaintiff McWilliams purchased a new 2017 Nissan Rogue Sport from M'Lady Nissan, an authorized Nissan dealership, in Crystal Lake, Illinois, in or about February of 2018.

18. In or about June of 2025, the Defect manifested in Plaintiff McWilliams's Vehicle. While driving his Vehicle, Plaintiff McWilliams noticed that his car engine seemed to be

overheating. Plaintiff McWilliams took the Vehicle to a private mechanic and had to pay over $1,200 for the replacement of his Radiator Fan.

19. Had Defendant disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to Plaintiff McWilliams purchasing his Vehicle, Plaintiff McWilliams would not have made the purchase, or would have paid less for the Vehicle. As a result, Plaintiff McWilliams received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

**Plaintiff Tracey Wigg**

20. Plaintiff Tracey Wigg resides in Easton, Pennsylvania. Plaintiff Wigg owns a 2017 Nissan Rogue Sport that she purchased new from Kelly Nissan, an authorized Nissan dealership, in Easton, Pennsylvania, in early 2017.

21. In or about late-May of 2026, the Defect manifested in Plaintiff Wigg's Vehicle. Plaintiff Wigg's Vehicle began overheating, with the check engine light coming on and then going away after the Vehicle was turned off. Plaintiff Wigg was forced to pull over on the highway to allow her Vehicle's engine to cool down. On June 2, 2026, Plaintiff Wigg took her Vehicle to a private mechanic in Easton, Pennsylvania, to obtain an attempted repair. Plaintiff Wigg paid $726.10 out of pocket for the replacement of the Radiator Fan in her Vehicle.

22. Had Defendant disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to Plaintiff Wigg purchasing her Vehicle, Plaintiff Wigg would not have made the purchase, or would have paid less for the Vehicle. As a result, Plaintiff Wigg received less than what she paid for her Vehicle and did not receive the benefit of her bargain.

**Plaintiff Daniel Sherbaum**

23. Plaintiff Daniel Sherbaum resides in Jacksonville, Florida. Plaintiff Sherbaum formerly owned a 2020 Nissan Rogue Sport that he purchased new from Nissan of Orange Park, an authorized Nissan dealership in Jacksonville, Florida, on or about December 27, 2020.

24. In or about late-May of 2026, the Defect manifested in Plaintiff Sherbaum's Vehicle. The air conditioning in Plaintiff Sherbaum's Vehicle first began to fail and then later his Vehicle shut down with smoke emitting from his Vehicle. His Vehicle had to be towed to Nissan of Orange Park. His Vehicle was diagnosed with the Defect along with a coolant leak and air conditioning leak. He was quoted approximately $1,611.37 for a repair, but did not obtain the repair due to its large cost.

25. Had Defendant disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to Plaintiff Sherbaum purchasing his Vehicle, Plaintiff Sherbaum would not have made the purchase, or would have paid less for the Vehicle. As a result, Plaintiff Sherbaum received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

**Defendant Nissan North America, Inc.**

26. Defendant Nissan North America, Inc. is a Delaware corporation with its principal place of business in Franklin, Tennessee. Defendant Nissan North America, Inc. designed, manufactured, marketed, distributed, leased, and sold, through its authorized dealers, distributors, and other agents, the Class Vehicles in the United States to Plaintiff and Class members.

27. Nissan North America, Inc.'s authorized dealers are agents of Nissan North America, Inc. This agency is factually supported by at least the following: 1) Nissan North America, Inc. issues TSBs to its dealerships relating to common issues in its vehicles; 2) Nissan North America, Inc.'s warranty directs Class Vehicle owners to present their vehicles to Nissan

North America, Inc.'s authorized dealerships for repairs; and 3) Nissan North America, Inc. requires dealerships to submit detailed data to it regarding repairs performed at dealerships.

## FACTUAL ALLEGATIONS

28. Defendant sells Class Vehicles to its authorized distributors and dealerships, which, in turn, sell or lease those vehicles to consumers. After these dealerships sell cars to consumers, including Plaintiffs and members of the classes, they purchased additional inventory from Defendant to replace the vehicles sold and leased, increasing Defendant's revenues. Thus, Plaintiffs' and Class members' purchases of Vehicles accrue to the benefit of Defendant by increasing its revenues.

### Radiator Cooling Fans and the Defect

29. Radiator Fans are an important feature in engine assemblies that are necessary to prevent the engine from overheating. The Radiator Fans are an important part of a vehicles' cooling system. A vehicle pumps coolant through the engine, where the coolant absorbs heat, and then move into the radiator where the heat is dissipated through a combination of passive airflow across the radiator (in motion) and a radiator cooling fan. Radiator Fans pull cooling air through the car's radiator when passive airflow is not enough to cool the radiator.[1] A representative diagram of the parts in a cooling system in the Vehicles is below, with the Radiator Fan represented as "15":[2]

---

[1] *Radiator/Cooling Fan*, CARS.COM, https://www.cars.com/auto-repair/glossary/radiatorcooling-fan/ (last accessed May 26, 2026).

[2] *Cooling System for 2019 Nissan Rogue Sport*, OEM Parts Online, https://nissan.oempartsonline.com/v-2019-nissan-rogue-sport--s--2-0l-l4-gas/cooling-system--cooling-system (last accessed June 2, 2026).




30. According to Allstate, "even one instance of engine overheating, if severe enough, can permanently damage the engine."[3]

31. The Vehicles are equipped with Nissan Part Number 21481-6MA0B, which is the Radiator Fan. Defendant's defective Radiator Fans cause overheating of the Vehicles' engine and failure of the air conditioning system. A diagram of the Radiator Fans is below:



[3] *What to do if your car is overheating*, ALLSTATE, https://www.allstate.com/resources/car-insurance/what-to-do-when-car-overheats (last accessed May 26, 2026).

32. The Radiator Fan is a critical safety feature in the Vehicles. Without the Radiator Fan, the engine will overheat in a variety of ordinary driving conditions, potentially resulting in engine failure. Insurance companies warn vehicle owners to immediately pull over and turn off their cars when their vehicles experience overheating.[4]

33. Overheating can also lead to the Vehicles stalling and stopping in the middle of traffic, which can lead to dangerous situations, such as a Vehicle stopping in the middle of a busy highway. Class members have reported these dangerous conditions occurring due to the Defect occurring in their Vehicles:[5]

FEBRUARY 17, 2026 NHTSA CAMPAIGN NUMBER: 11718469

**COMPONENT: ENGINE**

**NHTSA ID Number:** 11718469
**Incident Date:** September 18, 2025
**Consumer Location:** MORRISVILLE, PA
**Vehicle Identification Number:** JN1BJ1CR6JW******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

While driving my engine began to smoke, I had to pull over on a very dangerous highway. After getting the vehicle towed my mechanic determined that the engine over heated due to a faulty cooling fan on the engine. The head gasket now needs to be replaced, as well as the whole engine. He informed me this is a common issue they see in Nissan Rogue Sports. There were no warnings or issues noted. Only two months prior the car was serviced by the dealer.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| NISSAN | ROGUE SPORT | 2018 |

---

[4] *See, e.g.*, *id.*; *What to do if Your Car is Overheating and How to Prevent it*, AAA, https://info.oregon.aaa.com/what-to-do-if-your-car-is-overheating-and-how-to-prevent-it/ (last accessed May 26, 2026).

[5] NATIONAL HIGHWAY TRAFFIC SAFETY ADMIN., *Safety Issues & Recalls*, https://www.nhtsa.gov/recalls#vehicle (last accessed May 28, 2026).

FEBRUARY 5, 2026 NHTSA CAMPAIGN NUMBER: 11715732

## COMPONENT: UNKNOWN OR OTHER, ENGINE

**NHTSA ID Number:** 11715732

**Incident Date:** June 5, 2025

**Consumer Location:** LEXINGTON, KY

**Vehicle Identification Number:** JN1BJ1CR8JW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

On June 5th 2025, the radiator fan in my 2018 Nissan Rogue Sport stoped working while my idling in traffic and caused my engine to overheat and smoke. I immediately pulled over and turned off the engine to allow it to cool down. This problem could lead to catastrophic engine failure, warped cylinder heads, blown gaskets, and could even cause a fire, which places my safety and the safety of others around me in imminent danger!

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2018 |

MARCH 18, 2026 NHTSA CAMPAIGN NUMBER: 11725159

## COMPONENT: ENGINE

**NHTSA ID Number:** 11725159

**Incident Date:** March 14, 2026

**Consumer Location:** WATERTOWN, MA

**Vehicle Identification Number:** JN1BJ1CR5KW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

In October of 2025 my car stalled in slow traffic after a 100 mile car ride. After 20 minutes, it started again. The engine code was P0507. Two weeks later, without warning as I was accelerating on the highway the car stopped in the middle lane. This was incredibly dangerous. I had to wait 30 minutes in busy am traffic for a police escort. And the event was costly as I had to pay $200 to be towed off the highway. Once the car arrived at the service center, it started again. The mechanic convinced me to replace the purge solenoid as a starting place to address the problem. The car ran normally from November to March. In March 2026, after almost two hours in stop and go traffic, the car engine stalled out again. We pushed the car to the side of the road and waited 20 minutes. The engine started again. The coolant was below minimum and the computer code was P1217, engine overheat. My mechanic found a faulty cooling fan and replaced it on 3/17/26. This experience of the engine suddenly stopping while the car is moving with no warning or lights on the dash until the stallout has been extremely dangerous and costly. I believe Nissan knows of the cooling fan issue given online forums. Not recalling this faulty part has put me and my children in danger. In Summer 2024, the air conditioner of this car stopped working in traffic. It would blow hot air. The dealership could not replicate the issue and instead charged the air conditioner costing me a lot of money. The air conditioning problem has been intermittent since. I believe this is connected to the defective cooling fan and the Nissan dealership did not do their due diligence to investigate the issue.

**1 Associated Product -**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2019 |

JUNE 25, 2025 NHTSA CAMPAIGN NUMBER: 11669167

## COMPONENT: ENGINE

**NHTSA ID Number:** 11669167

**Incident Date:** June 24, 2025

**Consumer Location:** Unknown

**Vehicle Identification Number:** JN1BJ1CR9KW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

Engine coolant fan malfunction in summer of 2024 with replacement of engine coolant fan. Again with same issue in 2025 with issue of engine coolant fan malfunction and over heating engine/ exhausting coolant fluid. This has been an issue over the last two years for me and is a major safety concern. I was on a major congested highway in summer of 2024 when the engine coolant fan malfunctioned and fumes came from the hood of my car. It could've been a disastrous accident. Again I am experiencing issues with the same engine coolant fan.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2019 |

JULY 8, 2024 NHTSA CAMPAIGN NUMBER: 11600161

## COMPONENT: POWER TRAIN, ENGINE

**NHTSA ID Number:** 11600161

**Incident Date:** July 3, 2024

**Consumer Location:** Unknown

**Vehicle Identification Number:** JN1BJ1CW4LW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

My car stopped in the middle of AN EXTREMELY busy road with no warning lights or signs that my engine was over heating due to a faulty fan Giving more research into it there are thousands of people with Nissan rogue's experiencing the same exact issue and Nissan has not tried to fix the problem They are installing faulty cooling fans in peoples cars and putting them in dangerous situations when their cars overheat in heavy traffic They are going to cause the death of someone when their car stalls on a busy street with no warning or sign I was almost hit by several other cars

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2020 |

34. In addition to the dangerous conditions caused by the overheating of the engine, a failure of the Radiator Fans can also cause the failure of the Vehicles' air conditioning system, as the Radiator Fans provide the cool air for the Vehicles' air conditioning. This lack of air conditioning can cause dangerous conditions inside the Vehicles on hot days and on warm days when rolling the windows down infeasible, such as when it is raining.

**Defendant's Internal Testing**

35. Defendant was aware of or should have been aware of the Defect in the Class Vehicles at the time it was selling the Vehicles to Plaintiffs and Class members because of its rigorous internal testing coupled with its past experience and expertise in designing automobiles.

36. Nissan's parent company, Nissan Motor Corp., states that it performs "[c]omprehensive running tests" prior to selling a vehicle.[6] Nissan Motor Corp. claims that the tests ensure that the vehicles "withstand . . . scorching heat."[7] On information and belief, Nissan Motor Corp. requires Nissan North America, Inc. to perform the same tests.

37. Nissan represents on the webpage of another of its vehicles that "[a]t the Nissan Testing Center, we subject our vehicles to the equivalent of 15 years wear on drivetrain, powertrain and chassis components in just 5 months."[8]

38. In addition, Federal regulations require automobile manufacturers to build vehicles that comply with the Federal Motor Vehicle Safety Standards (49 C.F.R. § 571). The existence of

---

[6] *Comprehensive running tests*, Nissan Motor Corp., https://www.nissan-global.com/EN/SUSTAINABILITY/SOCIAL/QUALITY/PRODUCTS/GUARANTEE/ (last accessed May 26, 2026).

[7] *Id.*

[8] Rogue, NISSAN USA, https://www.nissanusa.com/vehicles/crossovers-suvs/rogue/ (last accessed May 26, 2026).

these standards necessarily requires Defendant to extensively test its vehicles prior to selling them. Before selling the Vehicles, Nissan was required to ensure that the Radiator Fans worked properly.

39. During the course of these and other quality validation testing conducted by its engineers prior to their sale, Defendant became aware of the Defect.

**Defendant's Representations and Omissions**

40. Defendant's advertising materials relating to the Vehicles in no way mention the Defect, but discuss a functioning engine and cooling system.[9] For example, the 2022 Rogue Sport materials discuss the 2.0-liter engine, but never mention that the cooling system will eventually fail and the engine will overheat.[10]

41. The Vehicles' Owners' Manuals discuss the Vehicles' engine cooling systems, but never mention the possibility of the Radiator Fans failing.[11]

---

[9] *See* 2022 Nissan Rogue Sport Press Kit, NISSAN, https://usa.nissannews.com/en-US/releases/2022-rogue-sport-press-kit (last accessed June 1, 2026); 2021 Nissan Rogue Sport Press Kit, NISSAN, https://usa.nissannews.com/en-US/releases/2021-rogue-sport-press-kit (last accessed June 1, 2026); 2020 Nissan Rogue Sport Press Kit, NISSAN, https://usa.nissannews.com/en-US/releases/2020-rogue-sport-press-kit (last accessed June 1, 2026); 2019 Nissan Rogue Sport Press Kit, NISSAN, https://usa.nissannews.com/en-US/releases/release-e98bad49d21a4577b9a8216f39ca6b5d-us-2019-nissan-rogue-sport-press-kit (last accessed June 1, 2026); 2018.5 Nissan Rogue Sport Press Kit, NISSAN, https://usa.nissannews.com/en-US/releases/us-2018-rogue-sport-press-kit (last accessed June 1, 2026); 2017 Nissan Rogue Sport Press Kit, NISSAN, https://usa.nissannews.com/en-US/releases/release-0e61b07a3896485bb597e8e6f0aa6b09-us-2017-nissan-rogue-sport-press-kit (last accessed June 1, 2026).

[10] *See*, 2022 Nissan Rogue Sport Press Kit, *supra* n.7.

[11] *2017 Rogue Sport Owner's Manual and Maintenance Information*, NISSAN MOTOR CO., LTD., https://www.nissan-cdn.net/content/dam/Nissan/pr/Owners-manuals/rogue-sport/2017-RogueSport-owner-manual.pdf (last accessed June 2, 2026); *2018 Rogue Sport Owner's Manual and Maintenance Information*, NISSAN MOTOR CO., LTD., https://owners.nissanusa.com/content/techpub/ManualsAndGuides/RogueSport/2018/2018-RogueSport-owner-manual.pdf (last accessed June 2, 2026); *2019 Rogue Sport Owner's Manual and Maintenance Information*, NISSAN MOTOR CO., LTD., https://owners.nissanusa.com/content/techpub/ManualsAndGuides/RogueSport/2019/2019-RogueSport-owner-manual.pdf (last accessed June 2, 2026); *2020 Rogue Sport Owner's Manual and Maintenance Information*, NISSAN MOTOR CO., LTD.,

42. In addition, Nissan's brochures for the Vehicles likewise omit any representations regarding the Defect.[12]

**NHTSA Complaints and Other Consumer Complaints**

43. That Defendant knew of or should have known of the Defect is also evidenced by the many NHTSA consumer complaints and complaints on web forums regarding the Defect.

44. The prevalence of these consumer complaints provides evidence that Defendant knew of, or should have known of, the Defect prior to selling the Vehicles. The fact the Defect is so widespread among the Vehicles and so many consumers' Vehicles are experiencing the Defect demonstrates that the Defect manifested during Defendant's pre-sale testing of the Vehicles.

---

https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/rogue_sport/2020/2020-nissan-rogue-sport-owner-manual.pdf?msockid=13dac98f31246d621b04de9b304f6c85 (last accessed June 2, 2026); *2021 Rogue Sport Owner's Manual and Maintenance Information*, NISSAN MOTOR CO., LTD., https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/rogue_sport/2021/2021-nissan-rogue-sport-owner-manual.pdf?msockid=13dac98f31246d621b04de9b304f6c85 (last accessed June 2, 2026); *2022 Rogue Sport Owner's Manual and Maintenance Information*, NISSAN MOTOR CO., LTD., https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/rogue_sport/2022/2022-nissan-rogue-sport-owner-manual.pdf?msockid=13dac98f31246d621b04de9b304f6c85 (last accessed June 2, 2026).

[12] *2017 Nissan Rogue Sport Brochure*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Nissan/Rogue/Nissan_US%20RogueSport_2017.pdf (last accessed June 2, 2026); *2018 Nissan Rogue Sport Brochure*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Nissan/Rogue/Nissan_US%20RogueSport_2018.pdf (last accessed June 2, 2026); *2019 Nissan Rogue Sport Brochure*, AUTO-BROCHURES.COM, https://www.nissanusa.com/content/dam/Nissan/us/vehicle-brochures/2019/2019-nissan-roguesport-brochure-en.pdf (last accessed June 2, 2026); *2020 Nissan Rogue Sport Brochure*, AUTO-BROCHURES.COM, https://www.nissanusa.com/content/dam/Nissan/us/vehicle-brochures/2020/2020-nissan-roguesport-brochure-en.pdf (last accessed June 2, 2026); *2021 Nissan Rogue Sport Brochure*, AUTO-BROCHURES.COM, https://www.nissanusa.com/content/dam/Nissan/us/vehicle-brochures/2021/2021-nissan-rogue-sport-brochure-en.pdf (last accessed June 2, 2026); *2022 Nissan Rogue Sport Brochure*, AUTO-BROCHURES.COM, https://www.nissanusa.com/content/dam/Nissan/us/vehicle-brochures/2022/2022-nissan-rogue-sport-brochure-en.pdf (last accessed June 2, 2026).

45. Defendant specifically monitors customers' complaints made to NHTSA. Federal law requires automakers like Defendant to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. See TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

46. Complaints of the Defect in the Vehicles date back to at least July of 2020, before many of the Vehicles were sold: [13]

JULY 20, 2020 NHTSA CAMPAIGN NUMBER: 11340456

**COMPONENT: ENGINE**

**NHTSA ID Number:** 11340456
**Incident Date:** July 10, 2020
**Consumer Location:** FORT WORTH, TX
**Vehicle Identification Number:** JN1BJ1CPXHW******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

MY VEHICLE WOULD BE WORKING AND RUNNING FINE FOR A LITTLE BIT BUT AFTER DRIVING IT FOR A WHILE, MY A/C WOULD STOP BLOWING COOL AIR. IT WOULD BE BLOWING COOL AIR AT FIRST AND THEN START BLOWING HOT AIR AND THEN MY CAR WOULD START TO OVERHEAT AFTERWARDS. I MOSTLY HAVE THIS PROBLEM WHEN MY CAR IS STOPPED FOR A WHILE OR NOT GOING ABOVE 40 MPH. I WENT TO THE NISSAN DEALERSHIP TO GET IT CHECKED OUT AND THEY SAID THE PROBLEM WAS THE COOLING FAN. MY CAR IS PRACTICALLY BRAND NEW. I BOUGHT IT BRAND NEW IN FEBRUARY OF 2018. IN ORDER TO GET THE COOLING FAN FOR MY CAR, I HAVE TO WAIT 2-3 WEEKS FOR IT TO COME IN BECAUSE THEY DON'T EVEN HAVE IT. I WENT TO A MECHANIC IN MY CITY AND THERE WAS A GUY WITH THE SAME YEAR, MAKE AND MODEL CAR AS MINE AND HE HAD THE EXACT SAME PROBLEM AS I DID. IT TURNS OUT THAT HE WENT TO THE DEALERSHIP AS WELL AND BOUGHT THE LAST COOLING FAN FROM THEM THERE'S NO WAY THAT THIS PERSON CAN COINCIDENTALLY HAVE THE SAME EXACT CAR WITH THE SAME EXACT PROBLEM IN THE SAME EXACT CITY. THEREFORE I'M FILING THIS COMPLAINT BECAUSE I'M OBVIOUSLY NOT THE ONLY ONE HAVING THIS ISSUE. MY CAR RUNNING AND WORKING IS A NECESSITY FOR ME FOR I HAVE KIDS AND HAVE TO GO TO WORK SO I'M HOPING THIS ISSUE CAN BE RESOLVED AS SOON AS POSSIBLE. THANK YOU.

**1 Associated Product -**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2017 |

[13] NATIONAL HIGHWAY TRAFFIC SAFETY ADMIN., *Safety Issues & Recalls*, https://www.nhtsa.gov/recalls#vehicle (last accessed May 28, 2026).

47. At least one consumer complaint mentions, among other issues, that the Defect has reoccurred after obtaining a replacement Radiator Fan:[14]

APRIL 16, 2026 NHTSA CAMPAIGN NUMBER: 11731498

**COMPONENT: UNKNOWN OR OTHER**

**NHTSA ID Number:** 11731498
**Incident Date:** April 10, 2026
**Consumer Location:** PANAMA CITY, FL
**Vehicle Identification Number:** JN1BJ1CP1KW******
**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | Radiator fan leading to engine overheating, fan fails to turn on causing high engine temperatures & AC failure. Nissan is aware of issues & takes no responsibility. Early on when vehicle experienced symptoms & under warranty, I brought vehicle in several times & was told they couldn't find anything wrong. Since warranty has expired, we've had to fix once & now it's happening again. Some symptoms: loud rattling in engine bay, AC blows hot air while idling & low speeds, engine overheating & stalling. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2019 |

48. Other complaints note that they had to wait for a replacement part due to the high demand for the parts when they took their Vehicles in for repair:

JULY 6, 2022 NHTSA CAMPAIGN NUMBER: 11472634

**COMPONENT: ENGINE**

**NHTSA ID Number:** 11472634
**Incident Date:** June 25, 2022
**Consumer Location:** DECATUR, GA
**Vehicle Identification Number:** JN1BJ1CR2HW******
**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | My car overheated. when I took it to my mechanic, he let me know my cooling fan assembly needs to be replaced, there is not a single cooling fan assembly for a 2017 Nissan rogue sport SL available in the continental US. Nissan has no idea when they will have the part available again, and neither do any of the aftermarket vendors such as AutoZone. This leads me to think that every single rogue in the country has had a problem with the cooling fan. I understand supply chain issues, but this is ridiculous. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2017 |

---

[14] *Id.*

JULY 8, 2021 NHTSA CAMPAIGN NUMBER: 11423914

## COMPONENT: ENGINE AND ENGINE COOLING

**NHTSA ID Number:** 11423914

**Incident Date:** June 14, 2021

**Consumer Location:** Unknown

**Vehicle Identification Number:** JN1BJ1CR9HW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

My car randomly gets a check engine light. I go to the dealership and they stated my engine is over heating. They told me that I need a new cooling assembly fan. However the part is not available and my car has been in the dealership for a month now. This was a faulty car and I have never been in a accident. They told me if I continue to drive my car my engine would explode

**2 Associated Products**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2017 |

AUGUST 18, 2022 NHTSA CAMPAIGN NUMBER: 11480012

## COMPONENT: ENGINE

**NHTSA ID Number:** 11480012

**Incident Date:** August 3, 2022

**Consumer Location:** COUNCIL BLUFFS, IA

**Vehicle Identification Number:** JN1BJ1CRXJW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

My car started smoking/steaming while I was driving through town at night, shortly after the engine light came on and my C/H indicator sailed over to H. I pulled over and immediately shut the car off, called for a tow truck. Took about 10 minutes for it to cool down and stop smoking/steaming. Mechanic ran a diagnostic on it and told me that the cooling fan broke and that it could have started a fire had I kept trying to drive it, said they measured the temp inside and it got up to 268 degrees. They ordered a new one for me, but were told that it would take a while because there were 26 other customers ahead of me that were also waiting for one. My car is still sitting with the mechanic if it needs to be inspected, this is the first time that I have had any trouble with the vehicle in the 3 years that I have owned it.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2018 |

AUGUST 17, 2021 NHTSA CAMPAIGN NUMBER: 11429438

## COMPONENT: ENGINE AND ENGINE COOLING

**NHTSA ID Number:** 11429438

**Incident Date:** July 19, 2021

**Consumer Location:** CLEARWATER, FL

**Vehicle Identification Number:** JN1BJ1CPXJW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

The contact owns a 2018 Nissan Rogue Sport. The contact stated that the air conditioning started to fail, and the vehicle started overheating and shut-off. The coolant fan had failed. The contact took the vehicle to the dealer and was informed that the fan was on backorder. The vehicle was repaired. The manufacturer was made aware of the failure. The approximate failure mileage was 85,000.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2018 |

JUNE 24, 2021 NHTSA CAMPAIGN NUMBER: 11422173

## COMPONENT: ELECTRICAL SYSTEM, ENGINE

**NHTSA ID Number:** 11422173

**Incident Date:** June 21, 2021

**Consumer Location:** SUN PRAIRIE, WI

**Vehicle Identification Number:** JN1BJ1CP7KW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

Radiator Fan Assembly within the 2019 Nissan Rogue Sport | Car radiator was at risk of overheating and malfunctioning. Air conditioning would shut down as radiator overheated. This put drivers and passengers at risk. Since the fan does not work, the radiator and engine is at risk of overheating. | This problem has been confirmed by local Midas service center as well as Berman Nissan of Chicago. Both service center and dealer confirmed that they have seen this specific component malfunction specifically in 2019 Nissan Rogue Sport vehicles. The component is on backorder nationwide due to the demand to replace. | Check engine light appeared briefly after radiator overheated. Light then disappeared after car cooled down.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2019 |

AUGUST 18, 2023 NHTSA CAMPAIGN NUMBER: 11539292

## COMPONENT: ENGINE AND ENGINE COOLING

**NHTSA ID Number:** 11539292

**Incident Date:** August 16, 2023

**Consumer Location:** MONROE, GA

**Vehicle Identification Number:** JN1BJ1CV9LW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

The contact owns a 2020 Nissan Rogue Sport. The contact stated that while his wife was leaving a parking lot, the vehicle stalled with steam coming from the engine. The contact was unaware if there were any warning lights illuminated. The vehicle was initially towed to an independent mechanic who was unable to service the vehicle; the vehicle was towed to a local dealer and the contact was informed that the cooling fan needed to be replaced. The dealer informed the contact that parts were on backorder and the vehicle could not be serviced. The manufacturer was not notified of the failure. The vehicle was not repaired. The failure mileage was approximately 20,000.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2020 |

AUGUST 21, 2021 NHTSA CAMPAIGN NUMBER: 11429983

## COMPONENT: ENGINE

**NHTSA ID Number:** 11429983

**Incident Date:** July 12, 2021

**Consumer Location:** PITTSBURG, TX

**Vehicle Identification Number:** JN1BJ1CV5LW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

The cooling fan has gone out in my 2020 Nissan rouge sport and I cant not order the parts to fix my car because they are not released by nissan I even took it to the nissan dealership and they told me the same thing the parts are not out I need a vehicle to go back and forth from work what am I I supose to do if I cant properly fix my nissan 2020 rouge sport

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2020 |

49. Below are additional complaints from owners and lessees of the Vehicles concerning the Defect available through NHTSA's website:

AUGUST 21, 2024 NHTSA CAMPAIGN NUMBER: 11610078

**COMPONENT: ENGINE**

**Incident Date:** August 21, 2024

**Consumer Location:** BRENTWOOD, TN

**Vehicle Identification Number:** JN1BJ1CRXHW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

Rogue Sport 2017, 52K miles: The A/C was not blowing and I took it into Firestone where they said it was a weak air compressor (this shouldn't be the case on a low mileage car). A week later the hood started smoking and upon inspection the coolant level was 1/4 tank and the engine malfunction light was on. I took it to and independent service center, Bass Auto (Nolensville Road, Nashville TN) and they said it was NOT SAFE to drive (engine can overheat and catch fire) due to a Radiator Coolant Fan (part # 214816MA0B or 214816MA0A) and that they have had to fix many of the these. The fan is responsible for blowing the cold air from the AC and keeping the engine cool so poses risk of engine failure. Looking at Reddit and facebook groups there are many people that have this issue on low mileage Rogue/Rogue Sports (Years 2017 - 2020) and there is a class action lawsuit that was filed in the State of Tennessee for this issue (XXX et al vs. Nissan - link below). I am having to spend > $1K to repair and this is a common issue that is unsafe and not recalled. [XXX] [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2017 |

AUGUST 23, 2024 NHTSA CAMPAIGN NUMBER: 11610560

## COMPONENT: ENGINE

**NHTSA ID Number:** 11610560

**Incident Date:** August 23, 2024

**Consumer Location:** HAMDEN, CT

**Vehicle Identification Number:** JN1BJ1CR6HW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

I reported to my dealer that my 2017 rogue sport has been overheating and they stated that they were aware of an issue with the radiator fan. The car will be fine while driving, but if idle or in stop and go traffic, the engine will overheat. I am unable to use my car without fearing for it, shaking and overheating during warm weather if I am not constantly driving.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2017 |

AUGUST 13, 2021 NHTSA CAMPAIGN NUMBER: 11428951

## COMPONENT: ENGINE AND ENGINE COOLING

**NHTSA ID Number:** 11428951

**Incident Date:** July 21, 2021

**Consumer Location:** DENVER, CO

**Vehicle Identification Number:** JN1BJ1CR5HW******

**Summary of Complaint**

**Crash:** No

**Fire:** Yes

**Injuries:** 0

**Deaths:** 0

The contact owns a 2017 Nissan Rogue. The contact stated while entering and starting the vehicle, after two minutes the contact noticed black smoke coming from underneath the hood of the vehicle. The contact exited the vehicle and noticed a puddle of radiator fluid leaking from underneath the vehicle. The contact called the emergency road safety insurance and the vehicle was towed to an independent mechanic who inspected the vehicle and diagnosed a failure with the cooling fan malfunction. The contact was informed that the cooling fan needed to be replaced however, the part was no longer being manufactured. The vehicle was not repaired. The manufacturer was made aware of the failure. The failure mileage was approximately 36,000.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2017 |

MAY 19, 2026 **NHTSA CAMPAIGN NUMBER: 11738912**

### COMPONENT: UNKNOWN OR OTHER

**NHTSA ID Number:** 11738912

**Incident Date:** May 19, 2026

**Consumer Location:** ONTARIO, CA

**Vehicle Identification Number:** JN1BJ1CPXJW******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | 2018 NISSAN ROGUE SPORT Cooling fan sudden stop and causing overheating in engine, warm air through AC, and AC clutch to shut off. Known problem with 2018-2020 NISSAN ROGUE models. Only an issue at lower speeds and when max air and coldest setting fan does not engage. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2018 |

JUNE 14, 2023 **NHTSA CAMPAIGN NUMBER: 11526994**

### COMPONENT: ENGINE

**NHTSA ID Number:** 11526994

**Incident Date:** May 15, 2023

**Consumer Location:** Unknown

**Vehicle Identification Number:** JN1BJ1CPXJW******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | Engine Cooling fan stops working without giving any warning of its failure Car engine then over heats and car AC stops working. Fire hazard potential. u can smell burning rubber coming from the engine due to the excessive heat. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2018 |

SEPTEMBER 14, 2020 NHTSA CAMPAIGN NUMBER: 11354976

## COMPONENT: UNKNOWN OR OTHER

**NHTSA ID Number:** 11354976

**Incident Date:** September 12, 2020

**Consumer Location:** ENGLEWOOD, FL

**Vehicle Identification Number:** JN1BJ1CP4JW******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | THE A/C STOPS BLOWING WHILE DRIVING. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2018 |

NOVEMBER 10, 2025 NHTSA CAMPAIGN NUMBER: 11698530

## COMPONENT: ENGINE

**NHTSA ID Number:** 11698530

**Incident Date:** November 4, 2025

**Consumer Location:** WAUKESHA, WI

**Vehicle Identification Number:** JN1BJ1CR3KW******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | Radiator cooling fan failed at 43,819 miles. Cost to repair was $554.95. Web search revealed that many others are experiencing this failure at ~40K miles on the Nissan Rogue Sport models. It seems like it should be a recall/reimbursement issue. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2019 |

SEPTEMBER 29, 2025 **NHTSA CAMPAIGN NUMBER: 11690326**

## COMPONENT: FUEL/PROPULSION SYSTEM

**NHTSA ID Number:** 11690326

**Incident Date:** September 27, 2025

**Consumer Location:** ASBURY PARK, NJ

**Vehicle Identification Number:** JN1BJ1CR0KW******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | My 2019 Nissan Rogue is just under 100k miles and started bucking back and forth while in NYC and stalled. Radiator fan stopped working and sends signal the vehicle it is overheating Needs to be replaced and thermostat and hoses INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2019 |

AUGUST 18, 2025 **NHTSA CAMPAIGN NUMBER: 11681391**

## COMPONENT: ENGINE

**NHTSA ID Number:** 11681391

**Incident Date:** August 17, 2025

**Consumer Location:** SAN MATEO, CA

**Vehicle Identification Number:** JN1BJ1CR2KW******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | To Whom It May Concern, I would like to report that my 2019 Nissan Rogue has experienced premature engine cooling fan malfunction at 78,000 miles resulting in overheating and engine failure. This is a costly repair, and the dealership is quoting over $1,200 to repair. After further investigation and discussion with dealership, this appears to be a common defect and clearly a manufacture. When researching this matter, it appears that this is a commonly reported defect on the NHTSA website for this specific make and model. I believe that this warrants further investigation by the NHTSA to protect consumers and in the interest of public safety from Nissans faulty product. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2019 |

JUNE 7, 2024 NHTSA CAMPAIGN NUMBER: 11592983

## COMPONENT: ENGINE AND ENGINE COOLING

**NHTSA ID Number:** 11592983

**Incident Date:** June 6, 2024

**Consumer Location:** KNOXVILLE, TN

**Vehicle Identification Number:** JN1BJ1CP6KW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

The contact owns a 2019 Nissan Rogue Sport. The contact stated while driving approximately 15 MPH a vibration and clanking noise was present coming from the engine compartment and the engine temperature gauge suddenly increased. After stopping the vehicle and examining underneath the hood, the contact discovered steam coming from the radiator and the cooling fan had malfunctioned. The vehicle was later towed to the local dealer who diagnosed that the cooling fan assembly was faulty and needed to be replaced. The vehicle was not yet repaired. The manufacturer was made aware of the failure. The failure mileage was 35,000.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2019 |

JULY 30, 2021 NHTSA CAMPAIGN NUMBER: 11427171

## COMPONENT: ENGINE AND ENGINE COOLING

**NHTSA ID Number:** 11427171

**Incident Date:** July 14, 2021

**Consumer Location:** CEDAR HILL, TX

**Vehicle Identification Number:** JN1BJ1CP0KW******

**Summary of Complaint**

**Crash:** No

**Fire:** Yes

**Injuries:** 0

**Deaths:** 0

The contact owns a 2019 Nissan Rogue. The contact stated that while operating the vehicle, there was a burning odor inside the vehicle. After, turning off the vehicle antifreeze started leaking from the radiator. After restarting the vehicle, the check engine warning light illuminated. The vehicle was towed to an independent mechanic who diagnosed that the thermostat and radiator fan were faulty and needed to be replaced. The thermostat was replaced but the failure persisted due to the faulty fan. The local dealer was notified of the failure, but no assistance was offered. The manufacturer was not notified of the failure. The failure mileage was 52,000.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2019 |

APRIL 20, 2026 NHTSA CAMPAIGN NUMBER: 11732505

## COMPONENT: UNKNOWN OR OTHER

**NHTSA ID Number:** 11732505

**Incident Date:** April 15, 2026

**Consumer Location:** NEDERLAND, TX

**Vehicle Identification Number:** JN1BJ1CV9LW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

The radiator fans in the Nissan Rogues are faulty. The AC stops working and then the car overheats causing loss of fluid and white smoke coming out from underneath the hood. The engine light didn't even come on to warn us that the car was overheating.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2020 |

DECEMBER 2, 2025 NHTSA CAMPAIGN NUMBER: 11702560

## COMPONENT: UNKNOWN OR OTHER, ENGINE

**NHTSA ID Number:** 11702560

**Incident Date:** October 8, 2025

**Consumer Location:** PALM COAST, FL

**Vehicle Identification Number:** JN1BJ1CV0LW******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

Fan Assembly - Nissan (21481-6MA0B) failed at 68,000 miles. Can can overheat and car will fail. This fan helps cool the AC and radiator.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2020 |

AUGUST 17, 2025 NHTSA CAMPAIGN NUMBER: 11681214

## COMPONENT: ENGINE

**NHTSA ID Number:** 11681214

**Incident Date:** June 25, 2025

**Consumer Location:** MORGANTOWN, WV

**Vehicle Identification Number:** JN1BJ1CW1LW******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | I had to replace my cooling system (fan, radiator, hoses, coolant) on this car after driving it only 30K miles. This led to over heating the car engine and stopped working because of that.. I was told by Nissan dealer it stopped working and they are seeing many of those issues related to the same car that I have. It costs me $1500 to replace it. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2020 |

SEPTEMBER 2, 2024 NHTSA CAMPAIGN NUMBER: 11612156

## COMPONENT: UNKNOWN OR OTHER, ENGINE

**NHTSA ID Number:** 11612156

**Incident Date:** September 1, 2024

**Consumer Location:** HENDERSONVILLE, TN

**Vehicle Identification Number:** JN1BJ1CW8LW******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | My car just made 50k miles and the cooling fan has gone out. A google search for a more reasonable replacement option (I was quoted almost $1100 for parts and labor) led me to a message board of other owners with the same issue and a class action lawsuit against Nissan. If this is indeed a widespread and known issue, Nissan needs to own up to it and make it right. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2020 |

OCTOBER 17, 2025 NHTSA CAMPAIGN NUMBER: 11694154

## COMPONENT: ENGINE

**NHTSA ID Number:** 11694154
**Incident Date:** September 6, 2025
**Consumer Location:** SANTA ROSA, CA
**Vehicle Identification Number:** JN1BJ1AW1MW******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

The radiator fan has failed, causing the air conditioning to not work unless the car is at high speeds, and at low speeds, the engine is at risk of overheating. The issue seems to be a bad bearing in the fan.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2021 |

JULY 4, 2025 NHTSA CAMPAIGN NUMBER: 11671297

## COMPONENT: ENGINE

**NHTSA ID Number:** 11671297
**Incident Date:** June 19, 2025
**Consumer Location:** NORCROSS, GA
**Vehicle Identification Number:** JN1BJ1AV6MW******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

The engine fan fails causing the fan to move and coolant levels to diminish which causes the engine to over heat.

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| NISSAN | ROGUE SPORT | 2021 |

**Plaintiffs' and Class Members' Injuries**

50. To date, Defendant has not demonstrated that it is capable of providing an adequate repair for the Defect, and Plaintiffs and Class members do not know whether Defendant is capable of providing a repair for the Defect. As such, and without the benefit of discovery, it is for all practical purposes impossible to know at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiffs and Class members. As a result, Plaintiffs, at this stage of the litigation, seek both restitution and a remedy at law, where the claims so permit.

51. Plaintiffs and Class members paid for Vehicles expecting that the Vehicles were not defective. Plaintiffs and Class members are owed damages of the difference between the price that Plaintiff and Class members paid for the Vehicle and the price of the Vehicles with the Defect.

52. In addition, Plaintiffs and Class members have suffered out-of-pocket losses related to obtaining replacements and repairs of the Radiator Fans, damage to the Vehicles or areas surrounding the Vehicle caused by the Defect, diminution in value of the Vehicles, costs associated with arranging and obtaining alternative means of transportation, and any other incidental and consequential damages recoverable under the law.

**TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL**

53. Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and Class members were deceived regarding the Class Vehicles and could not reasonably discover the Defect or Defendant's deception with respect to the Defect.

54. Plaintiffs and Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that the Defendant was concealing a defect

and/or the Class Vehicles contained the Defect and the corresponding safety risk. As alleged herein, the existence of the Defect was material to Plaintiffs and Class members at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and Class members could not have discovered—through the exercise of reasonable diligence—the existence of the Defect or that the Defendant was concealing the Defect.

55. At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and Class members the true standard, quality, and grade of the Class Vehicles and to disclose the Defect and corresponding safety risk due to its exclusive and superior knowledge of the existence and extent of the Defect in Class Vehicles.

56. Defendant knowingly, actively, and affirmatively concealed the facts alleged herein, and the Defect. Plaintiffs and Class members reasonably relied on Defendant's knowing, active, and affirmative concealment.

57. For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statutes of limitations.

## CLASS ACTION ALLEGATIONS

58. Plaintiffs, individually, and as a class action on behalf of similarly situated purchasers and lessees of the Vehicles pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3), seek to represent the following class:

> All United States residents who own or lease or previously owned or leased model year 2017–2022 Nissan Rogue Sport vehicles purchased or leased in the United States and its territories (the "Class").

59. Plaintiffs also bring this action on behalf of the following state subclasses:

**Illinois Subclass**

All Illinois residents who own or lease or previously owned or leased model year 2017–2022 Nissan Rogue Sport vehicles purchased or leased in the United States and its territories (the "Illinois Subclass").

**New York Subclass**

All New York residents who own or lease or previously owned or leased model year 2017–2022 Nissan Rogue Sport vehicles purchased or leased in the United States and its territories (the "New York Subclass").

**Pennsylvania Subclass**

All Pennsylvania residents who own or lease or previously owned or leased model year 2017–2022 Nissan Rogue Sport vehicles purchased or leased in the United States and its territories (the "Pennsylvania Subclass").

60. Excluded from the Class and the subclasses are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned.

61. Plaintiffs reserve the right to amend the definition of the class if discovery and/or further investigation reveal that the classes should be expanded or otherwise modified.

62. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

63. **Numerosity:** The members of the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. While the exact number and identities of individual members of the class is unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased in the United States.

64. **<u>Existence/Predominance of Common Questions of Fact and Law</u>:** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

a. whether Defendant engaged in the conduct alleged herein;

b. whether Defendant omitted and misrepresented material facts to purchasers and lessees of Class Vehicles;

c. whether Defendant's omissions and misrepresentations regarding the Class Vehicles were likely to mislead a reasonable consumer;

d. whether Defendant breached implied warranties with Plaintiffs and Class members when it produced, distributed, and sold the Class Vehicles;

e. whether Plaintiffs' and Class members' Vehicles were worth less than what they paid for them as a result of the Defect and conduct alleged herein;

f. whether Plaintiffs and Class members have been damaged and, if so, the extent of such damages; and

g. whether Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, restitution and injunctive relief.

65. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other class members. Similar or identical common law violations, business practices, and injuries are involved. Individual questions, if any, are substantially outweighed, in both quality and quantity, by the numerous common questions that dominate this action.

66. **<u>Typicality</u>:** Plaintiffs' claims are typical of the claims of the other Class members because, among other things, Plaintiffs and the other Class members were injured through the

substantially uniform misconduct described above. As with Plaintiffs, Class members also purchased or leased a Class Vehicle containing the Defect. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other class members, and no defense is available to Defendant that is unique to Plaintiffs. The same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class members. Plaintiff and Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct in selling/leasing and failing to adequately remedy the Defect.

67. **Adequacy:** Plaintiffs are adequate class representatives because they will fairly represent the interests of the class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and automobile defect class action cases. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the class they seek to represent and have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse or antagonistic to those of the class.

68. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By

contrast, the class action device presents no significant management difficulties, if any, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

69. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

70. Upon information and belief, Class members can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Defendant maintains regarding their sales, leases, and maintenance of Class Vehicles.

71. Unless the classes are certified, Defendant will improperly retain monies that it received from Plaintiffs and Class members as a result of its conduct.

## CAUSES OF ACTION

### COUNT I
### Breach of the Implied Warranty of Merchantability

72. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

73. Defendant is and was at all relevant times a merchant with respect to the Vehicles, and manufactured, distributed, warranted, and sold the Vehicles.

74. A warranty that the Vehicles were in merchantable condition and fit for ordinary purposes for which they were sold is implied by law.

75. Plaintiffs and Class members purchased or leased the Vehicles manufactured and sold by Defendant in consumer transactions.

76. The Vehicles, when sold and at all times thereafter, were not in merchantable condition and the Radiator Fans were not in merchantable condition and were not fit for the ordinary purpose for which cars are used. The Vehicles left Defendant's possession and control

with defective Radiator Fans that rendered them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to safety.

77. Defendant knew or should have known before the time of sale to Plaintiffs and the other class members, or earlier, that the Vehicles were produced with defective Radiator Fans that were unfit for ordinary use, that rendered the Vehicles unfit for their ordinary purposes, and that posed a serious safety threat to drivers, passengers, and everyone else sharing the road with the Vehicles. This knowledge was based on Defendant's own industry standard internal validation of its vehicles prior to launching a new model, internal testing, knowledge about and familiarity with the Radiator Fans included in the Vehicles, and complaints by consumers and third parties.

78. The existence and ubiquity of the Defect is illustrated by the numerous consumer complaints that Defendant received.

79. Despite Plaintiffs' and the other class members' normal, ordinary, and intended uses, maintenance, and upkeep, the Radiator Fans of the Vehicles experienced and continue to experience the Defect.

80. The defective Radiator Fans in the Vehicles and the Vehicles themselves are, and at all times were, not of fair or average quality, and would not pass without objection.

81. All conditions precedent have occurred or been performed.

82. Plaintiffs and Class members have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty required under Defendant's warranty, including presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

83. Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

84. In addition, upon information and belief, Defendant received numerous complaints, notices of the need for repair and resulting safety issues, and requests for warranty repairs and coverage relating to the Defect from other members of the class.

85. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to disclaim or otherwise limit express warranties in a manner that would exclude or limit coverage for the Defect that was present at the time of sale and/or lease, which Defendant knew or should have known about prior to offering the Vehicles for sale or lease, and which Defendant did not disclose and did not remedy prior to (or after) sale or lease, is unconscionable, and Defendant should be estopped from pursuing such defenses.

86. Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew or should have known when it first made these warranties and limitations that the Defect existed, and the warranties might expire before a reasonable consumer would notice or observe the Defect. Defendant also failed to take necessary actions to adequately disclose or cure the Defect after the existence of the Defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the Defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the Defect or cure its breaches of warranty.

87. As such, Defendant should be estopped from disclaiming liability for its actions.

88. Privity of contract is not required for consumer implied warranty claims under the relevant laws. However, Plaintiffs and Class members had sufficient direct dealings with Defendant and its agents (dealers) to establish privity of contract. Defendant, on the one hand, and Plaintiff and Class members, on the other hand, are in privity because of Nissan's New Vehicle Limited Warranty, which Defendant extends to Plaintiffs and Class members.

89. Privity is also not required in this case because Plaintiff and Class members are intended third-party beneficiaries of contracts between Defendant and its dealers (i.e., its agents); specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiffs and Class members. Privity is also not required because Plaintiffs' and Class members' Vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

90. As a result of Defendant's breaches of the implied warranty of merchantability, Plaintiffs and Class members suffered and will suffer out-of-pocket losses related to obtaining replacements of Radiator Fans, damage to the Vehicles or areas surrounding the Vehicle caused by the Defect, diminution in value of the Vehicles, costs associated with arranging and obtaining alternative means of transportation, and any other incidental and consequential damages recoverable under the law.

**COUNT II**
**Fraud/Fraudulent Omission**

91. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

92. Defendant actively, intentionally, and knowingly concealed, suppressed, and/or omitted material facts including the existence of the Defect and the standard, quality, or grade of

the Vehicles and the fact that the Vehicles contain a Defect and corresponding safety risk, with the intent that Plaintiffs and Class members rely on Defendant's omissions. As a direct result of Defendant's fraudulent conduct, as alleged herein, Plaintiffs and Class members have suffered actual damages.

93. Defendant knew or should have known at the time of sale or lease and thereafter that the Vehicles contained the Defect, omitted material information about the safety of the Vehicles, and actively concealed the Defect.

94. Defendant possessed superior and exclusive knowledge regarding the Defect, and therefore had a duty to disclose any information relating to the safety and functionality of key safety features in the Vehicles.

95. The Defect is material to Plaintiffs and Class members because Plaintiffs and Class members had a reasonable expectation that the Vehicles would contain a non-defective Radiator Fan. No reasonable consumer expects a vehicle to contain a concealed Defect in materials or workmanship, such as the Defect, as well as its associated safety risk.

96. Plaintiffs and Class members would not have purchased or leased the Vehicles but for Defendant's omissions and concealment of material facts regarding the nature and quality of the Vehicles and the existence of the Defect and corresponding safety risk, or would have paid less for the Vehicles.

97. Defendant knew its concealment and suppression of the Defect was false and misleading and knew the effect of concealing those material facts. Defendant knew its misstatements, concealment, and suppression of the Defect would sell more Vehicles. Further, Defendant intended to induce Plaintiffs and Class members into purchasing or leasing the Vehicles in order to decrease costs and increase profits.

98. Plaintiffs and Class members reasonably relied upon Defendant's knowing misrepresentations, concealment and omissions. As a direct and proximate result of Defendant's misrepresentations, omissions and active concealment of material facts regarding the Defect and the associated safety risk, Plaintiff and Class members have suffered actual damages in an amount to be determined at trial.

**COUNT III**
**Unjust Enrichment**

99. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

100. This claim is pleaded in the alternative to the other claims herein.

101. As a direct and proximate result of Defendant's omissions and its failure to disclose the known Defect, Defendant has profited through the sale and lease of the Vehicles. Although these Vehicles are purchased through Defendant's agents, the money from the Vehicle sales flows directly back to Defendant.

102. As a result of its wrongful acts, concealments, and omissions of the Defect in its Vehicles, as set forth above, Defendant charged a higher price for the Vehicles than the Vehicles' true value. Plaintiffs and Class members paid that higher price for their Vehicles to Defendant's authorized distributors and dealers, which are in Defendant's control.

103. Additionally, as a direct and proximate result of Defendant's failure to disclose known Defect in the Vehicles, Plaintiffs and Class members have Vehicles that will require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

104. Defendant has been unjustly enriched due to the known Defect in the Vehicles through the money paid that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiffs and Class members.

105. As a result of Defendant's unjust enrichment, Plaintiffs and Class members have suffered damages.

106. Equity and good conscience militate against allowing Defendant to retain its ill-gotten gains, and requires disgorgement and restitution of the same.

**COUNT IV**
**Violations of New York General Business Law § 349**
**(On Behalf of Plaintiff Superina and the New York Subclass)**

107. Plaintiff Superina realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

108. Plaintiff Superina brings this claim on behalf of the New York Subclass under New York Law.

109. New York General Business Law § 349 states, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

110. Nissan engaged in "business," "trade," or "commerce" within the meaning of N.Y. Gen. Bus. Law § 349(a).

111. Plaintiff Superina and New York Subclass members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

112. Nissan's sale of the Vehicles, while omitting or concealing the Defect is a "deceptive act or practice" under N.Y. Gen. Bus. Law § 349.

113. Had Plaintiff and the other New York Subclass members been aware of the omitted and misrepresented facts, i.e., that the Vehicles they purchased and leased were defective, Plaintiff and the other New York Subclass members would not have purchased and leased the Vehicles or would have paid significantly less for them than they actually paid.

114. Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff Superina seeks damages on behalf of himself and the New York Subclass in the amount of the greater of actual damages or $50 for each violation of N.Y. Gen. Bus. Law § 349. Because Nissan's conduct was committed willfully and knowingly, Plaintiff and the other New York Subclass members are entitled to recover up to three times their actual damages up to $1,000.

115. Plaintiff also seeks equitable relief, including an injunction, as the court deems necessary and proper.

**COUNT V**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat. 505/1, *et seq.* and 720 Ill. Comp. Stat. 295/1A**
**(On Behalf of Plaintiff McWilliams and the Illinois Subclass)**

116. Plaintiff McWilliams realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

117. Plaintiff McWilliams brings this claim on behalf of himself and on behalf of the members of the Illinois Subclass.

118. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 prohibits unfair or deceptive acts or practices in connection with any trade or commerce. Specifically, the Act prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

119. Nissan is a "person" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1(c).

120. Plaintiff McWilliams and the Illinois Subclass members are "consumers" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1(e).



Case 3:26-cv-00789 Document 1 Filed 06/10/26 Page 42 of 48 PageID #: 42

121. Nissan's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

122. Nissan knew that the Vehicles' Radiator Fans were defective, would fail prematurely, and were not suitable for their intended use.

123. Nissan had a duty to Plaintiff McWilliams and the Illinois Subclass members to disclose the Defect because:

a. Nissan was in a superior position to know the true state of facts about the Defect and its associated costs;

b. Plaintiff McWilliams and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles had defects until those defects became manifest;

c. Nissan knew that Plaintiff McWilliams and the Class members could not reasonably have been expected to learn about or discover the Defect.

124. In failing to disclose the Defect and its resulting safety risks, Nissan has knowingly and intentionally concealed material facts and breached its duty to disclose.

125. The facts Nissan concealed or did not disclose to Plaintiff McWilliams and the Illinois Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiff McWilliams and the Illinois Subclass known the Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

126. Nissan's conduct caused Plaintiff's damages as alleged.

127. As a result of Nissan's wrongful conduct, Plaintiff McWilliams and the Illinois Subclass have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, court costs, and reasonable attorneys' fees pursuant to 815 Ill. Comp. Stat. 505/1, et seq.

**COUNT VI**
**Violations of Illinois Uniform Deceptive Trade Practices Act**
**815 Ill. Comp. Stat. 510/1, *et seq.* and 720 Ill. Comp. Stat. 295/1A**
**(On Behalf of Plaintiff McWilliams and the Illinois Subclass)**

128. Plaintiff McWilliams realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

129. Plaintiff McWilliams brings this claim on behalf of himself and on behalf of the members of the Illinois Subclass.

130. 815 Ill. Comp. Stat. 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represents that goods or services have sponsorship, approval, characteristics ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; . . . (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . (9) advertises goods or services with intent not to sell them as advertised; . . . [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

131. Nissan is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

132. The Class Vehicles sold to Plaintiff McWilliams and the Illinois Subclass were not of the particular sponsorship, approval, characteristics, ingredients, uses benefits, or qualities represented by Nissan.

133. The Class Vehicles sold to Plaintiff McWilliams and the Illinois Subclass were not of the particular standard, quality, and/or grade represented by Nissan.

134. Nissan caused to be made or disseminated through Illinois and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care Nissan should have known to be untrue and misleading to consumers, including Plaintiff and other Class members.

135. Nissan has violated the Illinois Uniform Deceptive Trade Practices Act because its misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles were material and likely to deceive a reasonable consumer.

136. Plaintiff McWilliams and the other Illinois Subclass members have suffered injuries in fact, including the loss of money or property, resulting from Nissan's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff McWilliams and the other Illinois Subclass members relied on Nissan's omissions with respect to the Class Vehicles' safety and reliability. Had Plaintiff McWilliams and the other Illinois Subclass members known this, they would not have purchased or leased the Class Vehicles or would not have paid as much for them. Accordingly, Plaintiff McWilliams and the other Illinois Subclass members did not receive the benefit of their bargain.

137. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Nissan's business. Nissan's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of Illinois and nationwide.

138. Nissan's conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiff McWilliams and the Illinois Subclass.

139. As a result of the foregoing wrongful conduct of Nissan, Plaintiff McWilliams and the Illinois Subclass have been damaged in an amount to be proven at trial, including, but not limited to actual and punitive damages, equitable relief and reasonable attorneys' fees.

**COUNT VII**
**Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL")**
**(On Behalf of Plaintiff Wigg and the Pennsylvania Subclass)**

140. Plaintiff Wigg realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

141. Plaintiff Wigg brings this claim on behalf of herself and on behalf of the members of the Pennsylvania Subclass.

142. Nissan sells and advertises its vehicles and services in the Commonwealth of Pennsylvania.

143. Plaintiff Wigg, Pennsylvania Subclass members, and Nissan are "persons" as defined by the PUTPCPL. 73 P.S. § 201-2(2).

144. Nissan's sales of vehicles and advertising constitute as "trade" and "commerce" under the statute. 73 P.S. § 201-2(3).

145. Nissan engaged in unfair or deceptive practices in violation of the PUTPCPL by selling the Vehicles while omitting facts about the Defect or concealing the Defect.

146. The PUTPCPL lists twenty-one instances of "unfair methods of competition" and "unfair or deceptive acts or practices." 73 P.S. § 201-2(4). Nissan's sale of the Vehicles while it knew, or should have known, about the Defect and while failing to disclose the Defect to Plaintiff Wigg and Pennsylvania Subclass members falls under at least the following categories:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have

or that a person has a sponsorship, approval, status, affiliation or connection that he does not have (73 P.S. § 201-2(4)(v));

b. Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another (73 P.S. § 201-2(4)(vii));

c. Advertising goods or services with intent not to sell them as advertised (73 P.S. § 201-2(4)(ix)); and

d. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (73 P.S. § 201-2(4)(xxi)).

147. As a result of Nissan's conduct, Plaintiff Wigg and Pennsylvania Subclass members have suffered injuries in fact, including the loss of money or property, resulting from Nissan's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff Wigg and Pennsylvania Subclass members relied on Nissan's omissions with respect to the Class Vehicles' safety and reliability. Had Plaintiff Wigg and Pennsylvania Subclass members known this, they would not have purchased or leased the Class Vehicles or would not have paid as much for them. Accordingly, Plaintiff Wigg and Pennsylvania Subclass members did not receive the benefit of their bargain.

148. Pursuant to 73 P.S. § 201-9.2(a), Plaintiff Wigg seeks actual damages, $100, or three times their actual damages, whichever is greatest. Plaintiff Wigg also seeks costs, expenses, and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Class, pray for judgment as follows:

a) Certification of the classes under Federal Rule of Civil Procedure 23;

b) Appointment of Plaintiffs as representatives of the Class and their counsel as class counsel;

c) Compensatory and other damages for economic and non-economic damages;

d) An award of restitution and/or disgorgement;

e) An injunction requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

f) Statutory pre-judgment and post-judgment interest on any amounts;

g) Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

h) Such other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: June 10, 2026

Respectfully submitted,

By: */s/ Kevin H. Sharp*

Kevin H. Sharp, BPR No. 016287
Kristi Stahnke McGregor, GA Bar No. 0674012
Kasi Wautlet, BPR No. 038688
**SANFORD HEISLER SHARP McKNIGHT, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7000
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com
kmcgregor@sanfordheisler.com
kwautlet@sanfordheisler.com

Ben Barnow (*pro hac vice* to be filed)
Anthony L. Parkhill (*pro hac vice* to be filed)
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60606
Telephone: (312) 621-2000
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*Counsel for Plaintiffs*